UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CRIMINAL ACTION NO. 6:13-cr-7-DCR-1

UNITED STATES OF AMERICA,                                PLAINTIFF,

V.                          **MAGISTRATE JUDGE'S**
                           **REPORT AND RECOMMENDATION**

SHANE JEFFERSON BEGLEY,                           DEFENDANT.

*** *** *** *** ***

## INTRODUCTION

This matter is before the undersigned on Defendant Shane Begley's Motion to Vacate pursuant to 28 U.S.C. § 2255, [R. 375], which raises five ineffective assistance of counsel claims. He also requests that this Court hold an evidentiary hearing on these claims and appoint him counsel for the hearing. [R. 375-1 at 1]. For reasons set forth below, the undersigned RECOMMENDS that Begley's § 2255 petition, and his requests for an evidentiary hearing and appointment of counsel, be DENIED.

## FACTUAL BACKGROUND & PROCEDURAL HISTORY

Shane Begley was arrested for possession of methamphetamine on January 17, 2013. [R. 375-2 at 2–3]. On the day of his arrest, Begley and another individual, Teddy Vaughn, were located and detained inside a London convenience store by Task Force agents, who believed Begley was involved in narcotics-related activity. [R. 375-1 at 10–11, 18]. During a pat down search, agents located the key to Begley's locked vehicle which was parked nearby, but found no narcotics on his person. However, during Vaughn's pat down search, agents found a pill bottle containing a small amount of crystal methamphetamine. [Id.]. Based upon this discovery, agents asked for Begley's consent to search the interior of his vehicle. When he refused, he was

temporarily detained in the backseat of a police car while agents waited for a canine unit to arrive. [Id.]. The drug dog arrived, sniffed the exterior of Begley's car, and "alerted" to the driver side area. Based upon the dog's alert, agents used Begley's key to unlock the vehicle and search the interior. [Id.]. Under the floor mat, agents found a small bag containing seven grams of methamphetamine and a glass pipe. [R. 375-1 at 3].

On May 28, 2013, Begley pled guilty to Conspiracy to Manufacture 500 Grams or More of a Mixture or Substance Containing Methamphetamine, in violation of 21 U.S.C. § 846. [Rs. 138, 219]. With the exception of ineffective assistance of counsel claims, Defendant waived his right to collaterally attack his guilty plea, conviction and sentence, and waived his statutory right to appeal his guilty plea and conviction, reserving the right to appeal his sentence. [R. 219]. On October 28, 2013, the Court sentenced him to 240 months of imprisonment, followed by eight years of supervised release. [R. 231]. Defendant appealed to the Sixth Circuit, [R. 234], arguing that his sentence was procedurally unreasonable and claiming he should have only received a 3-level enhancement pursuant to USSG § 3B1.1(b), rather than the 4-level enhancement imposed pursuant to USSG § 3B1.1(a), [id.], but the Sixth Circuit affirmed. [R. 337]. On June 9, 2016, proceeding *pro se*, Begley filed the instant 28 U.S.C. § 2255 motion to vacate his sentence, raising five ineffective assistance of counsel claims based upon counsel's failure to seek suppression of evidence seized following drug dog search, failure to challenge Begley's lengthy pre-arrest detention, failure to investigate the coercion of a co-defendant's confession, failure to provide proper advice regarding his potential sentences, and counsel's decision to call co-defendant Chelsea Carson as a witness at Begley's sentencing. [R. 375]. These claims are addressed below.

**STANDARD OF REVIEW**

Generally, a prisoner has a statutory right to collaterally attack his conviction or sentence. Watson v. United States, 165 F.3d 486, 488 (6th Cir. 1999) ("[B]oth the right to appeal and the right to seek post-conviction relief are statutory rights . . ."). For a federal prisoner to prevail on a 28 U.S.C. § 2255 claim, he must show that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law nor open to collateral attack, or otherwise must show that there was "a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." Id.

Put another way, for relief under 28 U.S.C. § 2255, the prisoner must show that: (1) his conviction resulted from an error of constitutional magnitude; (2) his sentence was imposed outside the statutory limits; or (3) an error of fact or law occurred that was so fundamental as to render the entire proceedings invalid. Mallett v. United States, 334 F.3d 491, 496–97 (6th Cir. 2003), cert. denied, 540 U.S. 1133 (2004); see also Moss v. United States, 323 F.3d 445, 454 (6th Cir. 2003), cert. denied, 540 U.S. 879 (2003). He must sustain these allegations by a preponderance of the evidence. McQueen v. United States, 58 F. App'x 73, 76 (6th Cir. 2003) (unpublished) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence."); Pough v. United States, 442 F.3d 959, 964 (6th Cir. 2006). If the prisoner alleges a constitutional error, he must establish by a preponderance of the evidence that the error "had a substantial and injurious effect or influence on the proceedings." Watson, 165 F.3d at 488 (citing Brecht v. Abrahamson, 507 U.S. 619, 637–38 (1993); Pough, 442 F.3d at 964. Alternately, if he alleges a non-constitutional error, he must establish "a fundamental defect which inherently results in a complete miscarriage of justice . . . an error so egregious that it amounts to a violation of due

3

process." Watson, 165 F.3d at 488 (citing United States v. Ferguson, 918 F.2d 627, 630 (6th Cir. 1990).

To prevail on an ineffective assistance of counsel claim under § 2255, the petitioner must prove both deficient performance and prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). To prove deficient performance, he must show that "counsel's representation fell below an objective standard of reasonableness." Id. at 687–88. In applying this test, reviewing courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance . . ." Id. Second, the petitioner must establish prejudice, by showing there is a reasonable probability that, but for counsel's unprofessional errors, the result of his proceedings would have been different. Id. at 694–95. Notably, "[w]hen deciding ineffective-assistance claims, courts need not address both components of the [deficient performance and prejudice] inquiry 'if the defendant makes an insufficient showing on one.'" Campbell v. United States, 364 F.3d 727, 730 (6th Cir. 2004); Strickland, 466 U.S. at 697.

## ANALYSIS

In his § 2255 petition, Begley argues counsel was ineffective by: (1) failing to seek suppression of drug evidence seized during the search of Begley's car; (2) failing to challenge Begley's hour-long detention prior to his arrest; (3) failing to investigate the "cumulative, pretextual violations" that Task Force agents allegedly committed by coercing the confession of co-defendant Brenda Eversole; (4) providing confusing, improper advice regarding Begley's plea agreement terms and his potential sentencing ranges; and (5) eliciting testimony from Chelsea Carson, Begley's ex-girlfriend and co-defendant, at his sentencing, which was intended to mitigate his involvement but ultimately reinforced his leadership role which contributed to a harsher sentence. See generally [R. 375-1 at 3, 10, 16, 26–27]. Begley adds there is a

4

"reasonable probability that but for counsel's errors, [he] would have proceeded to trial instead of accepting the Government's 240 month plea agreement." [R. 375-1 at 1]. For reasons set forth below, each of these ineffective assistance claims is without merit.

1.   **Counsel's Alleged Failure to Move to Suppress Evidence Seized During Warrantless Search of Defendant's Car**

Begley alleges that counsel was ineffective by "failing to investigate and challenge the illegal search and seizure" of his vehicle. [R. 375-1 at 3]. He contends counsel "overlooked [Begley's] expectation of privacy" by not seeking to suppress the drugs seized pursuant to the warrantless search of his car following the canine unit's positive alert. [Id. at 4]. Begley also argues counsel generally failed to "apply current precedent" governing warrantless searches and seizures. [R. 375-1 at 4]. He elaborates: "while a dog search for narcotics is permissible around the exterior of a vehicle . . . a search of the interior . . . may be performed without a warrant if the person is a motorist at the time of the detention, [if] the vehicle is a readily mobile vehicle, and [if] the officer's subjective knowledge leads him to believe that the vehicle contains evidence of a crime giving him rise to the level of probable cause." [R. 375-1 at 4] (citing United States v. Lumpkin, 159 F.3d 983 (6th Cir. 1998)). Begley contends there are certain elements required for any valid warrantless search (citing Lumpkin), alleges those elements were absent in his case (though he never articulates what those missing elements are), and alleges counsel was deficient by failing to argue that "at least two, if not all, of the above factors were absent." [R. 375-1 at 4].

Begley cites to a series of cases, from Arizona v. Gant, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009) to United States v. Sharp, 689 F.3d 616 (6th Cir. 2012), to illustrate the unconstitutional nature of the warrantless search. As an initial matter, the cases to which he cites

5

do not support his claim, but only reinforce the search's constitutionality[1]. For example, the U.S. Supreme Court in <u>Lumpkin</u> simply held that, under the "automobile exception" to the warrant requirement, officers may search a readily mobile vehicle without a warrant if they have probable cause to believe the vehicle contains evidence of a crime. <u>United States v. Lumpkin</u>, 159 F.3d 983, 986 (6th Cir. 1998).

So long as agents had probable cause to believe Begley's vehicle contained evidence of a crime, the warrantless search was constitutional. The Sixth Circuit has held that a positive indication from a properly trained drug dog is sufficient to establish probable cause for the presence of controlled substances in a vehicle, and a subsequent search of the vehicle after the drug dog indicates the presence of drugs within does not violate the Fourth Amendment. <u>United States v. Diaz</u>, 25 F.3d 392 (6th Cir. 1994); <u>United States v. Place</u>, 462 U.S. 696, 707, 103 S.Ct. 2637, 2644–45, 77 L.Ed.2d 110 (1983). The warrantless search of Begley's car was permissible because the drug dog's positive alert provided agents with the requisite probable cause to conduct the warrantless search. <u>See, e.g.</u>, <u>United States v. Perez</u>, 440 F.3d 363, 374 (6th Cir. 2006); <u>United States v. Hill</u>, 195 F.3d 258, 273 (6th Cir. 1999); <u>United States v. Aguando-Garcia</u>, No. 3:09CR175, 2010 WL 3769107, at *6 (S.D. Ohio Sept. 27, 2010). Defense counsel's failure to pursue frivolous motions and objections does not constitute ineffective assistance, <u>United States v. Hanley</u>, 906 F.2d 1116, 1121 (6th Cir. 1990), and given the facts, any motion to suppress would have proved futile. Where the evidence was obtained pursuant to a valid warrantless search, and no legitimate basis for suppression existed, counsel was not deficient in this regard.

---

[1] The defendant in <u>Gant</u> was subject to a search incident to a lawful arrest, another exception to the warrant requirement which is not implicated here, while <u>Sharp</u> held that a trained canine's sniffing inside a car after instinctively jumping into the car did *not* violate the Fourth Amendment.

**2.      Counsel's Alleged Failure to Challenge Defendant's Lengthy Detention**

According to Begley, after he was detained by Task Force agents on January 17, 2013 and refused to consent to search of his vehicle, they "placed [him] in handcuffs and secured him in the back seat of a police vehicle." [Id. at 11]. While he was detained, the canine unit was summoned to the scene, sniffed the car's exterior, and gave a positive alert to the driver's side area. [Id.]. Begley claims the "time required for the canine officer to arrive and the search of the vehicle's exterior endured for approximately one hour," while he "remained handcuffed and secured" in the back seat. [Id.]. He argues this excessively lengthy hour-long detention amounted to an unlawful arrest in violation of his constitutional rights, and claims counsel was deficient by "failing to investigate and challenge the lengthy detention." [R. 375-1 at 10].

The Fourth Amendment allows police to detain a suspect on reasonable suspicion only for as long as it takes for the police to test the validity of their suspicions. United States v. Davis, 430 F.3d 345 (6th Cir. 2005). Accordingly, if an officer temporarily detains someone based upon a reasonable suspicion of the person's criminal activity, but takes subsequent actions that go beyond the ordinary investigation, the detention only then "becomes an arrest that must be supported by probable cause." United States v. Obasa, 15 F.3d 603, 607 (6th Cir. 1994). In making this determination, the Court analyzes whether the length and manner of the investigative stop were reasonably related to the basis for the initial intrusion. Houston v. Clark County Sheriff Deputy John Does 1–5, 174 F.3d 809, 814 (6th Cir. 1999); see also United States v. Perez, 440 F.3d 363, 372 (6th Cir. 2006) (internal citations omitted); United States v. Palomino, 100 F.3d 446, 449 (6th Cir. 1996).

Regarding length of detention, the Sixth Circuit has held that a drug dog's arrival at the scene within 30 to 45 minutes is a permissible means of investigating the reasonable suspicion,

7

Davis, 430 F.3d at 354, and has upheld the constitutionality of an hour-long safety inspection of a vehicle following a lawful traffic stop.  United States v. Garrido, 467 F.3d 971 (6th Cir. 2006); United States v. Ellis, 497 F.3d 606, 613 (6th Cir. 2007).  The Sixth Circuit has also held that a driver's meeting with a known drug dealer justified the driver's continued detention until a drug-sniffing dog could arrive, but any additional detention once the dog failed to alert was unreasonable.  United States v. Davis, 430 F.3d 345, 355–56 (6th Cir. 2005); United States v. Walton, 258 F. App'x 753, 758 (6th Cir. 2007).

Agents were permitted to detain Begley on the reasonable suspicion that he had drugs for as long as it took to test the validity of their suspicion.  Davis, 430 F.3d 345.  Particularly where the tip as to Begley's whereabouts proved accurate, and where drugs were subsequently found on Vaughn's person, the hour-long detention was reasonable to allow agents to adequately test the validity of their reasonable suspicion through the drug dog search.  Begley presents no evidence that his detention was impermissibly lengthy or improper, and counsel's failure to object to the length of detention was not deficient, nor prejudicial where Begley provides no evidence that, but for counsel's failure, "the result of the proceeding would be different."  Strickland, 466 U.S. at 694.  Begley has not satisfied Strickland, and his claim is without merit.

3.   **Counsel's Alleged Failure to Investigate Purported Illegal Acts by Case Agents**

Third, Begley alleges counsel was ineffective by failing to investigate a "series of cumulative, pre-textual violations with the Task Force's Narcotics investigation."  [R. 375 at 22]. Specifically, this claim is based upon his allegation that co-defendant Brenda Eversole, who agreed to help officers by identifying Begley as her supplier and calling him to arrange a meeting, [R. 375-1 at 16–18], was manipulated and coerced by agents.  Defendant claims that, "[w]ithout Eversole's statement, law enforcement could not have relied upon any actions taken at

8

the Parkway Market, where they contacted [him]," [id. at 19], and claims agents used "physical and psychological methods [] to overbear Eversole's will." [Id. at 20]. He now alleges that counsel failed to defend Begley from the "coerced confession of Eversole." [Id. at 23].

To the extent Begley's claim is founded upon counsel's failure to move to suppress the statements of co-defendant Brenda Eversole because they were allegedly coerced, he has no standing to bring this claim. Fourth Amendment rights "are personal rights that, like some other constitutional rights, may not be vicariously asserted." United States v. Hopper, 58 F. App'x 619, 624 (6th Cir. 2003); United States v. Gayheart, No. CRIM A 06-3-DLB, 2007 WL 528449, at *3 (E.D. Ky. Feb. 14, 2007). The U.S. Supreme Court has stated that "[s]ubsequent attempts to vicariously assert violations of the Fourth Amendment rights of others have been repeatedly rejected by this Court." United States v. Salvucci, 448 U.S. 83, 86 (1980); see also Rawlings v. Kentucky, 448 U.S. 98 (1980). Here, the evidence Begley seeks to suppress are statements made by a co-defendant, but generally, a criminal defendant does not have standing to challenge a violation of a cooperating witness' rights. Evans v. Luoma, No. 2:05-72726, 2007 WL 128925, at *4 (E.D. Mich. Jan. 12, 2007). He clearly lacks standing to assert such a claim. Alderman v. United States, 394 U.S. 165, 171–72, 89 S. Ct. 961, 965, 22 L.Ed.2d 176 (1969) (". . . suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. Coconspirators and codefendants have been accorded no special standing.").

**4.     Counsel's Allegedly Improper Advice Regarding Defendant's Plea Agreement**

Fourth, Begley alleges counsel was ineffective by "providing improper advice concerning the proposed plea agreement." [R. 375-1 at 26]. Defendant provides two letters from counsel

9

dated April 26, 2013 and May 6, 2013, [R. 375-2 at 4–6], to illustrate that counsel told him he faced a sentencing guideline range of 135–168 months, based upon an offense level of 34 and criminal history category of III. [Rs. 375-1 at 26–27, 375-2]. He claims that he pled guilty as a result, believing he would not face more than 168 months imprisonment. [Id.]. Begley alleges counsel was deficient where he "rendered erroneous and incorrect advice concerning the pre-plea realistic sentencing calculation," prejudicing Begley who "could not make an informed, intelligent choice to plea . . . because he never knew [] his true guideline sentencing exposure." [Id. at 27].

Counsel's letters were sent on April 26, 2013 and May 6, 2013, and Begley filed his motion for rearraignment on May 14, 2013. [R. 104]. Where Begley was eventually sentenced to 240 months, [R. 231], he was advised of this possibility by counsel prior to his rearraignment. In counsel's April 26, 2013 letter to Defendant, he writes:

> [A]ssuming you plead guilty to the Plea Agreement and received the 3 point reduction for Acceptance of Responsibility, your guideline range would still be 135 to 168 months and the Judge would most likely sentence you to 135 months. However, **given the amount of the Methamphetamine, even without the *Notice of Enhancement*, you would still fall in that guideline range of 135+ months**.

[R. 375-2 at 5] (emphasis added). Likewise, in his May 6, 2013 letter, counsel writes:

> The US will be arguing to enhance you as an organizer or leader under§ 3Bl.1 at sentencing. Even if the US was not seeking to enhance you, there is AN EXTREMELY STRONG LIKELIHOOD that the USPO would seek this enhancement, whether there is air in a Plea Agreement or not. **This would have the effect of increasing your base offense level to a 41 or a 42.**
>
> . . . .
>
> IF YOU PLEAD GUILTY PURSUANT TO A PLEA AGREEMENT, YOU REALLY NEED TO COOPERATE . . . If you were real helpful, the US could go as high as recommending a 40% reduction in your sentence from the low end of the Guidelines. That would be to a range of 194 months. THAT SAID, I WOULD EXPECT THE JUDGE TO ONLY GO DOWN 3 OR 4 LEVELS TO A

      BASE OFFENSE LEVEL OF 36 OR 35. **This would place you in the range of 235–293 months or 210–262 months**.

[R. 375-2 at 9–10] (emphasis added). According to his Presentence Report, based upon a total offense level of 35 and a criminal history category of III, Begley's guideline imprisonment range was 210 months to 262 months. [R. 245 at 20]. This was a sentencing range explicitly anticipated in counsel's May 6, 2013 letter: "This would place you in the range of . . . 210–262 months." [R. 375-2 at 10].

      Contrary to Begley's claims, the correspondence from counsel proves that he was advised of the potential sentences he faced. Counsel's letters informed Begley of the possibility that his guideline range could increase due to potential leadership role enhancements, and also stressed that counsel could make no guarantees as to the criminal history category or resulting sentence:

> **This Judge will find you to be an organizer or leader (4 points) or a manager or supervisor (3 points) under §3Bl.l. Let's assume the worse case scenario and assess you 4 points.** This places you at a base offense level of 42. Assuming that you plead guilty timely, you will come in [at an] adjusted base offense level of 39. **I do not and no one can definitively tell you at this juncture what your criminal history category is.** However, I believed that when we last looked at this, we *guestimated* that you would be a Criminal History Category of III. Assuming that we are accurate in this assessment, your sentencing range under this scenario if you accepted their Plea Agreement AND DID NOT COOPERATE would be 324 to 405 months.

[R. 375-2 at 10] (emphasis added).

      Further, even if counsel provided inaccurate sentencing information, the government notes that an attorney's inaccurate advice about potential sentencing ranges rarely constitutes ineffective assistance, because the "prejudice prong of Strickland is seldom met." [R. 383 at 9], citing Bibbs v. United States, No. 1:00-CR-84, 2005 WL 3416476, at *5 (E.D. Tenn. Dec. 13, 2005) (citation omitted). In Bibbs, counsel advised defendant of a potential 151–188 month range, and when the court ultimately set his guideline range at 262–327 months, defendant

11

claimed ineffective assistance, but the Court held that even if such error had occurred, defendant could not show prejudice. Id. at 5–6. In his reply, Begley himself acknowledges that, regarding sentencing, it was "ultimately up to the court to decide the end result." [R. 390 at 8].

Based upon the record, counsel adequately advised Begley of the consequences of his guilty plea, warning him of the possibility that a leadership role enhancement could potentially increase his base offense level to 41 or 42. See, e.g., [R. 375-2 at 9]. Where he was clearly advised of the potential sentences, Begley has not shown how counsel was deficient or how he was prejudiced, and his claim is without merit.

5.      **Calling Co-Defendant to Testify at Defendant's Sentencing**

Finally, Begley alleges that counsel was ineffective by calling Begley's ex-girlfriend and co-defendant Chelsea Carson to testify at his sentencing and possibly mitigate his leadership role in the conspiracy. [R. 375-1 at 27–28]. Begley explains this plan backfired when Carson's testimony "slaughtered Petitioner's credibility," by verifying that he *was* a leader in the underlying criminal activity, and thus "sustaining the U.S.S.G. 3B1.1(b) leadership role enhancement." [Id. at 28]. "[I]ncensed by the co-defendant's testimony," the judge imposed a 240-month sentence, which was "much higher than that calculated by defense counsel." [Id.]. Begley contends that counsel's decision to call Carson as a witness constitutes ineffective assistance, because the decision was highly prejudicial to him. [Id. at 29]. He argues that "[n]o strategy can explain this inept move," where counsel "would have known that her testimony would only be damaging versus helpful," having met with Carson days before the sentencing hearing. [Id.]; [R. 390 at 8–9].

Decisions regarding whether to call or question witnesses are matters of defense strategy, Hutchison v. Bell, 303 F.3d 720, 749 (6th Cir. 2002), and a failed trial strategy, by itself, is not

enough to render an attorney's performance deficient.  See, e.g., Roe v. Flores-Ortega, 528 U.S. 470, 120 S.Ct. 1029, 1037, 145 L.Ed.2d 985 (2000); Hall v. Phillips, No. 05 Civ.1981, 2010 WL 6612518, at *5 (S.D.N.Y. Apr. 14, 2010) ("[H]abeas court[s] will not second-guess trial strategy simply because the chosen strategy has failed.") (citation omitted).  Due to the strong presumption in favor of counsel's trial strategies, "in cases involving mere 'attorney error,' [courts] require the defendant to demonstrate that the errors 'actually had an adverse effect on the defense.'"  Flores-Ortega, 528 U.S. at 482.  Begley is unable to demonstrate this adverse effect, particularly where the sentencing judge indicated that his leadership role had already been determined – ". . . the range includes a number of what the Court would consider to be aggravating factors, specifically his role, his leadership role, which I've determined earlier . . ." [R. 275 at 67] – and was not exclusively based upon Carson's testimony.  In fact, the court acknowledged that it had been considering a higher sentencing range prior to the hearing:

> When I look at the nature and the circumstances of the offense in this particular matter, as well as the other factors that were noted earlier, it would not be appropriate to impose a sentence at the bottom of the guideline range in the case in this case. And considering the information that was provided to the Court at side bar . . . as well as the information that's contained in the very lengthy objections to the presentence report, information that would be positive to the defendant, I believe that the minimum sentence that could be imposed in a case such as this would be a term of incarceration of 240 months. **Quite frankly, the Court's starting point was higher, but after considering the objections and considering the arguments of the attorneys and the other information that has been provided, I do believe that a term of incarceration of 240 months will be sufficient.**

[R. 275 at 70] (emphasis added).  If anything, Begley faced a higher potential sentence even prior to the sentencing hearing where Carson's testimony was heard.  [Id. at 70].  Although counsel's strategy proved unsuccessful, Begley has not established prejudice under Strickland where he has not shown, but for this damaging testimony, his sentence would have been lower.

13

Where counsel's apparently unsuccessful strategy is by itself insufficient to render his performance deficient, Hall, 2010 WL 6612518, at *5, this claim is without merit.

## RECOMMENDATION

The Court RECOMMENDS that Defendant's 28 U.S.C. § 2255 Petition [R. 375], and his requests for an evidentiary hearing and appointment of counsel, be DENIED.

Specific objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived. United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Bituminous Cas. Corp. v. Combs Contracting Inc., 236 F. Supp. 2d 737, 749–50 (E.D. Ky. 2002). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

Signed October 28, 2016.



Signed By:
Edward B. Atkins  *EBA*
United States Magistrate Judge