UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | Criminal Action No. 6: 13-007-DCR-6 |
| | ) | and |
| V. | ) | Civil Action No. 6: 16-099-DCR |
| | ) | |
| SHANE JEFFERSON BEGLEY, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant/Movant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On May 28, 2013, Defendant Shane Begley pleaded guilty to conspiring to distribute 500 grams or more of a mixture or substance containing methamphetamine in violation of 21 U.S.C. § 846.  [Record Nos. 138, 219]  Begley was sentenced to a term of imprisonment of 240 months, followed by an eight-year term of supervised release.  [Record No. 231] Thereafter, the United States Court of Appeals for the Sixth Circuit affirmed Begley's sentence.  [Record No. 337]  The matter is now pending for consideration Begley's *pro se* motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255.  [Record No. 375]

Consistent with local practice, Begley's motion was referred to a United States Magistrate Judge for review and issuance of a report pursuant to 28 U.S.C. § 636(b)(1)(B). After briefing by the parties, United States Magistrate Judge Edward A. Atkins recommended that Begley's § 2255 motion, together with his request for an evidentiary hearing and for appointment of counsel, be denied.  [Record No. 407]

Although this Court must make a *de novo* determination of those portions of the Magistrate Judge's recommendations to which timely objections are made, 28 U.S.C. §

636(b)(1)(C), "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985).  Although Begley's objections were filed two weeks after the 14-day limit provided by § 636(b), the Court has examined the entire record, including Begley's objections.  And having made a *de novo* determination, the undersigned agrees with the Magistrate Judge's Report and Recommendation [Record No. 407].

### I.

Pursuant to his guilty plea, Begley waived the right to collaterally attack his plea, conviction, and sentence, except for claims of ineffective assistance of counsel.  [Record No. 219]  In the § 2255 motion, Begley raises an ineffective-assistance-of-counsel claim on the following grounds: (1) failure to challenge the search of his vehicle; (2) failure to challenge his pre-arrest detention based on its length; (3) failure to challenge the search of a co-defendant's residence; (4) failure to provide proper advice regarding the potential sentence; and (5) counsel's decision to call co-defendant Chelsea Carson as a witness during his sentencing hearing.

### II.

#### A.      Temporary Detention and Automobile Search

On January 17, 2013, while at a convenience store in London, Kentucky, Begley and his companion, Teddy Vaughn, were approached by law enforcement officers who had received a tip that Begley was involved in drug trafficking.  [Record No. 375–2, p. 2] According to a police report, Begley and Vaughn agreed to a pat-down search, and officers discovered that Vaughn possessed a small amount of methamphetamine.  *Id.*  Subsequently,

- 2 -

officers asked to search Begley's car, but Begley refused.  Begley contends that, at that point,

he was handcuffed and placed in the back of a police cruiser while a drug detection dog was

brought to the scene.   [Record No. 375–1, p. 2]    The dog performed an exterior sniff of

Begley's vehicle and alerted to the passenger door area.  *Id.*  Officers then unlocked the car

and directed the dog to perform a sniff inspection of the interior of the vehicle.[1]  Following a

second positive alert by the dog, officers discovered a bag containing crystal

methamphetamine under a floor mat.  *Id.* at 3.  Begley challenges his trial attorney's failure to

seek suppression of the methamphetamine discovered during this search.

To establish ineffective assistance of counsel, Begley must show that counsel's

performance was deficient and that the deficient performance prejudiced his defense so as to

render the proceedings unfair and the result unreliable.  *See Strickland v. Washington*, 466 U.S.

668, 687 (1984).  In other words, Begley must demonstrate "a reasonable probability that, but

for counsel's errors, he would not have pleaded guilty and would have insisted on going to

trial."  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

The Supreme Court has held that "the failure to file a suppression motion does not

constitute per se ineffective assistance of counsel."  *Immelmann v. Morrison*, 477 U.S. 365,

384 (1986).  If the motion would not have been successful, counsel "may not be criticized for

having accurately assessed his client's chances" of challenging the police action.  *Worthington

v. United States*, 726 F.2d 1089, 1093–94 (6th Cir. 1984).  Whether trial counsel "acted

incompetently in not filing a . . . motion to suppress depends upon the merits of the search and

---

[1] Begley contends that officers seized his car key during the pat-down search, but the DEA investigation report indicates that Begley provided the key to officers following the positive dog sniff on the exterior of the vehicle.  [Record No. 375–2, p. 2]

seizure question." *United States v. Thomas*, 38 F. Apex 198, 201 (6th Cir. 2002) (quoting *Worthington*, 726 F.2d at 1093 (Connie, concurring)).

The memorandum in support of Begley's § 2255 motion indicates that officers had specific and articulable facts supporting their initial, temporary stop of Begley. *See United States v. Hudson*, 405 F.3d 425, 431–32 (6th Cir. 2005) (citing *United States v. Hensley*, 469 U.S. 221, 229 (1985). *See also Terry v. Ohio*, 392 U.S. 1, 21 (1968)). The officers were part of a task force investigating narcotics trafficking in the area and had received a tip from Begley's co-defendant (Brenda Eversole) implicating Begley in a drug trafficking conspiracy. Further, when it is reasonable to believe that two individuals are co-conspirators, officers may seize one individual based on contraband found on the other. *See United States v. Williams*, 949 F.2d 220, 221–22 (6th Cir. 1992).

Begley alleges that it took approximately one hour for a canine officer to arrive and complete the exterior search of his vehicle. With regard to this argument, the Court notes that there is no rigid time limitation imposed on investigatory stops. *United States v. Sharpe*, 470 U.S. 675, 685 (1985); *United States v. Winfrey*, 915 F.2d 212, 216 (6th Cir. 1990). Rather, following an initial stop, any subsequent detention must be "reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Orsilini*, 300 F.3d 724, 728 (6th Cir. 2002) (quoting *Terry*, 392 U.S. at 20). The Court examines the totality of the circumstances in determining "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Sharpe*, 470 U.S. at 686. Here, one hour is not an unreasonable amount of time, based on the circumstances presented, and there is no indication that the police were not diligent in pursuing the investigation. *See Orsilini*, 300 F.3d at 730

- 4 -

(*Terry* stop involving drug dog lasting approximately one hour was not unreasonable).  *See also United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005) (police had reasonable suspicion to detain defendant for an additional 30 to 45 minutes to obtain drug sniffing dog).

Additionally, the Court notes that the use of handcuffs and brief detention in a police cruiser do not automatically convert an investigatory stop into an arrest.  *Kowolonek v. Moore*, 463 F. App'x 531, 536 (6th Cir. 2012) (citing *Smoak v. Hall*, 460 F.3d 768, 781 (6th Cir. 2006)).  Where officer safety or the risk of flight by the suspect are of significant concern, the use of handcuffs and detention are often deemed reasonable.  *See id.* (collecting cases).  Further, while detained in the patrol car, officers told Begley that he was not under arrest.  *See United States v. Tummins*, 517 F. App'x 342, 344 (6th Cir. 2013) (citing *United States v. Salvo*, 133 F.3d 943, 951 (6th Cir. 1998) ("Where an officer tells a suspect that he or she is not under arrest, we have tended to find the suspect was not in custody."))

Once the drug detection dog alerted to the exterior of Begley's vehicle, the police had authority to perform a warrantless search of the vehicle pursuant to the automobile exception.  *See United States v. Lyons*, 687 F.3d 754 (6th Cir. 2012).  *See also United States v. Diaz*, 25 F.3d 392, 393–94 (6th Cir. 1994) ("A positive indication by a properly-trained dog is sufficient to establish probable cause for the presence of a controlled substance.").  When an officer has probable cause to believe that a vehicle contains contraband, he may search the entire vehicle and any contents located within it.  *United States v. Mans*, 999 F.2d 966, 969 (6th Cir.) *cert. denied*, 510 U.S. 999 (1993).

Again, the Court notes that counsel is not required to raise futile objections to avoid a claim of ineffective assistance.  *See McQueen v. Scroggy*, 99 F.3d 1302, 1328 (6th Cir. 1996).  Under the circumstances presented, Begley's attorney did not provide constitutionally

ineffective assistance by failing to file a motion to suppress the narcotics seized as a result of the search of Begley's vehicle.

###### B.    Challenges Involving Co-Defendant Brenda Eversole

According to Begley, on January 17, 2013, while conducting surveillance of possible narcotics activity, officers observed a vehicle leaving co-Defendant Brenda Eversole's residence.  [Record No. 375–1, p. 16]  Police stopped the vehicle for expired registration, suspecting that the vehicle may contain evidence of drug activity.  The driver, Steven Floyd, had an active warrant for his arrest.  When a search of the vehicle yielded methamphetamine, Floyd advised officers that he had been using methamphetamine in Eversole's residence.  *Id.* at p. 17.

Based on these events, officers sought to obtain a search warrant for Eversole's home.  *Id.*  Although officers eventually obtained the warrant, Begley maintains that officers entered and searched Eversole's home prior to the warrant being issued.  *Id.*  Begley further asserts that, after officers discovered methamphetamine and drug paraphernalia in Eversole's home, officers coerced her to provide information about individuals who were selling methamphetamine.  *Id.* at p. 18.  At that point, Eversole called Begley, and the two agreed to meet at the convenience store where officers later made contact with Begley and Vaughn.

To successfully assert a violation of his Fourth Amendment rights, a defendant must have a reasonable expectation of privacy in the place searched.  *Minnesota v. Carter*, 525 U.S. 83, 88 (1998); *United States v. Pollard*, 215 F.3d 643, 647 (6th Cir. 2000).  Begley does not purport to have had an expectation of privacy in Eversole's home and, therefore, does not have standing to challenging the search.  *See e.g.*, *United States v. Washington*, 573 F.3d 279, 282–83 (6th Cir. 2009).  Likewise, Begley does not have standing to challenge the basis of the

- 6 -

traffic stop involving Floyd.  *See Brendlin v. California*, 551 U.S. 249, 255–56 (2007).
Further, there is no suggestion that Floyd's registration had not actually expired.   But
regardless of the officer's motivation for stopping Floyd, the stop was valid as long as there
was probable cause to do so.  *See United States v. Hill*, 195 F.3d 258, 265 (6th Cir. 1999).

Begley also contends that his attorney failed oppose the government's actions which
"set the stage" to establish Begley's culpability.   [Record No. 375-1, p. 18]   Specifically,
Begley argues that his attorney had a duty to work "in cooperation with Eversole's defense
counsel." *Id.*  However, Eversole's attorney had an obligation to act in *Eversole's* best interest,
and there is no reason to believe that Eversole wished to suppress her statements or the
evidence seized from her home.   Accordingly, counsel's alleged failure to consult with
Eversole's attorney does not constitute deficient performance.

Begley also argues that Eversole's statements implicating him were not reliable and,
therefore, did not constitute reasonable suspicion for the police to confront him at the
convenience store on January 17, 2013.  This argument is unpersuasive, as Begley was present
at the planned meeting location, along with Vaughn who possessed methamphetamine.
Further, during Begley's sentencing hearing, he advised the Court that he sold drugs to
Eversole and that "[he] would be lying" if he said the drugs were for Eversole's personal use.
[Record No. 275, p. 40]

Finally, Begley contends that his attorney provided deficient representation by failing
to move to dismiss the charges against him based on numerous alleged *Brady* violations
including payments, "in the form of leniency . . . or other things of value, given to the
defendants in this case."   [Record No. 375, p. 21]   While failure to disclose a witness's
agreement with the government may constitute a *Brady* violation, "the mere fact that a witness

desires or expects favorable treatment in return for [] testimony is insufficient; there must be some assurance or promise from the prosecution that gives rise to a mutual understanding or tacit agreement." *Akrawi v. Booker*, 572 F.3d 252 (6th Cir. 2009).  In this case, there is no indication that Eversole had such an agreement with the government.

Allegations that are purely speculative cannot support a *Brady* claim.  *Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000).  Further, it is reasonable for counsel to presume that the government will "fully perform its duty to disclose all exculpatory materials" and include such materials in the "open files tendered to defense counsel for examination." *Harbison v. Bell*, 408 F.3d 823, 843 (6th Cir. 2005) (quoting *Strickler v. Greene*, 527 U.S. 263, 284 (1999)).  Accordingly, counsel's failure, if any, to investigate potential non-disclosure of *Brady* material does not constitute deficient performance.

### C.      Advice Regarding Sentencing Exposure

Begley next contends that his attorney provided ineffective assistance by advising him that he would receive a prison sentence of 168 months or less.  [Record No. 375–1, p. 26]  Per letter of April 26, 2013, however, counsel advised Begley that, based on the information available at the time, his base offense level under the Sentencing Guidelines could be 34 or 38.  [Record No. 375–2, p. 4]  On May 6, 2013, counsel advised Begley that he would likely receive a leadership role enhancement and that, if he chose not to cooperate with government, his guidelines range would likely be 324 to 405 months.  *Id.* at p. 10.  Counsel advised Begley that, if he cooperated, the Court may assign a base offense level of 35 or 36, resulting in a range of 210 to 262 or 235 to 293 months, respectively.  *Id.*

During the sentencing hearing, the Court determined that Begley's base offense level was 35 and sentenced him to 240 months' imprisonment.  While counsel is not required to

"predict" the sentence a defendant will receive, *see e.g.*, *Sullivan v. United States*, 11 F.3d 573 (6th Cir. 1993), this sentence falls squarely within the sentencing range predicted by counsel. Further, Begley has not demonstrated that the advice given was unreasonable or that counsel made any assurances regarding the precise sentence that he would receive.

### D.    Testimony of Chelsea Carson

Begley also contends that counsel rendered ineffective assistance by introducing the testimony of Begley's former girlfriend, Chelsea Carson, during the sentencing hearing. Begley alleges that counsel's strategy of using Carson's testimony to show that Begley was not a leader in the conspiracy "backfired," and resulted in a greater sentence for Begley. Concerning this claim, counsel is strongly presumed to have made all decisions in the exercise of reasonable professional judgment and sound strategy. *Nix v. Whiteside*, 475 U.S. 157, 165 (1986). But even if the decision to introduce Carson's testimony could be considered deficient trial strategy, the sentencing transcript reveals that the strategy did not result in prejudice. The Court concluded that Begley was a leader in the conspiracy based on the information contained in the presentence report. [Record No. 275, p. 54] Carson's testimony bolstered that finding, but was not essential to the Court's determination.

### III.    Motion for Hearing/Appointment of Counsel

Because the § 2255 motion, along with the record in this case, conclusively show that Begley is not entitled to the relief sought, an evidentiary hearing is not warranted. *See* 28 U.S.C. § 2255(b). Even assuming that Begley's allegations are true, there is no indication that counsel performed deficiently or that counsel's performance prejudiced Begley in any meaningful way. Begley has raised no additional issues or controverted facts to be examined during an evidentiary hearing.

The Court also finds that appointment of counsel is not warranted. *See Wright v. West*, 505 U.S. 277, 293 (1992); *Abdur-Rahman v. Mich. Dep't of Corrs.*, 65 F.3d 489, 492 (6th Cir. 1995). Begley has filed a 30-page brief in support of his motion, which indicates that he is able to present his case without the assistance of counsel. Further, the relevant issues are not so complex that they have precluded Begley from effectively arguing his case.

## IV.    Certificate of Appealability

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 Proceedings, and 28 U.S.C. § 2253(c), the Court will deny a certificate of appealability. Begley has failed to show that reasonable jurists would find this Court's "assessment of the constitutional claims debatable or wrong" or that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

## V.    Conclusion

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1.     The Magistrate Judge's Report and Recommendation [Record No. 407] is **ADOPTED** and **INCORPORATED** herein by reference. Defendant/Movant Begley's objections to the Report and Recommendation [Record No. 410] are **OVERRULED**.

2.     Defendant/Movant Begley's motion to vacate under 28 U.S.C. § 2255 [Record No. 375], including his request for the appointment of counsel and for an evidentiary hearing, are **DENIED** and his claims are **DISMISSED**, with prejudice, and **STRICKEN** from the Court's docket.

3.     A Judgment in favor of the United States shall issue this date.

This 29th day of November, 2016.



Signed By:

*Danny C. Reeves*   DCR

United States District Judge